UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID C. ANDREWS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE BANK, NA, et al.,<br><br>Defendants. | CASE NO. C15-0428JLR<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

This matter comes before the court on pro se Plaintiffs David C. and Melinda C. Andrews' ("the Andrews") motion for a temporary restraining order (Mot. (Dkt. # 13)) and Defendants'[1] opposition thereto (Resp. (Dkt. # 14)). The Andrews seek to prevent the non-judicial sale of their property on April 10, 2015. (*See id.* at 1-2.) The court has

---

[1] Defendant Countywide Bank, NA, has not joined in the opposition. (*See* Resp. (Dkt. # 14).) For ease of reference, however, the court will refer to the opponents of the motion as "Defendants."

ORDER- 1

reviewed the Andrews' motion, Defendants' opposition, the complaint, and the governing law. Being fully advised, the court DENIES the Andrews' motion for a temporary restraining order.[2]

## II. BACKGROUND

On March 2, 2015, the Andrews filed this lawsuit in the Superior Court for King County, Washington, against Defendants Countrywide Bank, NA ("Countrywide"); Mortgage Electronic Registration Services, Inc. ("MERS"); Nationstar Mortgage, LLC ("Nationstar"); DB Structured Products, Inc. ("DBSP"); Deutsche Alt-A Securities, Inc. ("DAAS"); HSBC Bank USA, NA ("HSBC"); and Does 1-10. (Not. of Rem. (Dkt. # 1) Ex. A (Dkt. # 1-1) at 2-98 ("Compl.") at 1.) Their complaint alleges that their home loan was paid off when their lender, Countrywide, sold the loan during securitzation, and that the deed of trust securing the loan therefore should have been released at that time. (*See id.* ¶¶ 14-16.) The complaint further alleges defective transfers of the promissory note (*see id.* ¶¶ 17-24), and improper assignments of the deed of trust (*see id.* ¶¶ 26-38). On the basis of these allegations, the complaint asserts claims for breach of contract (*id.* ¶¶ 41-44); slander of title (*id.* ¶¶ 45-57); violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (*id.* ¶¶ 58-70); and declaratory relief (*id.* ¶¶ 71-85).

On March 19, 2015, MERS and Nationstar removed the lawsuit to this court. (*See* Not. of Rem. at 1.) At the time of removal, the Andrews had a motion for a temporary

---

[2] The court finds that oral argument is unnecessary. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER- 2

restraining order pending in state court. (*See* Ver. of State Ct. Rec. (Dkt. # 2) Ex. A (Dkt. # 2-1) at 123-30.)  The Clerk noted the motion on this court's calendar on March 27, 2015.  (*See* Mot.)  The motion seeks to restrain a trustee's sale of the Andrews' property until a hearing can be held to determine whether Defendants should be enjoined from foreclosing on the property. (*See id.* at 6.)  In addition, the Andrews attach a completed application to proceed in forma pauperis which details their present lack of financial means and resulting inability to pay filing fees and court costs.[3]  (*See id.* Ex. 1 (Dkt. # 13-1) at 1-2.)

### III.   DISCUSSION

A plaintiff seeking a temporary restraining order in federal court must meet the standards for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Accordingly, the plaintiff must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  In addition, a "preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the

---

[3] Because the Andrews did not remove this case from state court, they are not responsible for paying the filing fees associated with commencing a new case in this court.

ORDER- 3

public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Non-judicial foreclosures in Washington are governed by the Deed of Trust Act ("DTA"), RCW ch. 61.24. *Cox v. Helenius*, 693 P.2d 683, 685 (Wash. 1985); *see also Vawter v. Quality Loan Serv. Corp. of Wash.*, 707 F. Supp. 2d 1115, 1121-22 (W.D. Wash. 2010) (explaining the operation of the DTA), *disagreed with on other grounds by Walker v. Quality Loan Serv. Corp. of Wash.*, 308 P.3d 716, 720-24 (Wash. Ct. App. 2013). The procedure set forth in RCW 61.24.130 for restraining a trustee's sale initiated pursuant to the DTA is "the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure." *Cox*, 693 P.2d at 686. Specifically, under RCW 61.24.130(1), a court must "require as a condition of granting the restraining order or injunction that the applicant pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed." RCW 61.24.130(1).

The court does not question that the Andrews are likely to suffer irreparable harm in the absence of a temporary restraining order. Indeed, they are at risk of losing their home in an April 10, 2015, trustee's sale. (*See* Mot. at 1-2.) The court cannot, however, find serious questions, let alone a likelihood of success, on the merits of the Andrews' claims as required to support a temporary restraining order. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1134-35.

First, a key allegation in the Andrews' complaint rests on illogical and unsupported assumptions about their home loan. In particular, the Andrews allege that

ORDER- 4

their loan was paid off when their lender, Countrywide, sold the loan on the secondary market.  (*See* Compl. ¶¶ 14-15 ("[Countrywide] being paid all sums due upon the Andrews Note sold the Andrews Note to [DBSP] . . . .").)  The assumption underlying this allegation appears to be that any payment a lender accepts in relation to a loan is a payment of the sums due on the loan.

The Andrews' assumption misapprehends both the legal effect of a secondary market loan sale and the Andrews' obligations under their promissory note and deed of trust.  In a secondary market loan sale the buyer purchases the lender's rights.  *See Cashmere Valley Bank v. Dep't of Rev.*, 334 P.3d 1100, 1102 (Wash. 2014) ("The secondary market buyer acquires the right to receive the borrower's principal and interest payments on the home loan and also the right to foreclose on the home if the borrower fails to make timely payments.")  No buyer would pay for those rights, however, if the purchase discharged the borrower's obligation and thereby rendered the rights valueless.  More importantly, the Andrews' promissory note and deed of trust place the duty to repay the loan on the Andrews and provide no indication that sale of the loan will discharge that duty.[4]  (*See* Compl. at 38-42 ("Promissory Note") ¶ 1 (reciting the Andrews' promise to repay the principal plus interest as well as their understanding that the lender may transfer the promissory note); Compl. at 45-56 ("Deed of Trust") at  2, 9-10.)

---

[4] In addition, the Andrews have not provided the court with any documentation of the alleged sale between Countrywide and DBSP.

ORDER- 5

Furthermore, the allegation that sale discharged the loan is critical to the Andrews' claims. It forms the foundation of the Andrews' breach of contract claim (*see id.* ¶¶ 41-44), and is essential to at least their slander of title and FDCPA claims as well (*see id.* ¶¶ 48(d)-(e), 51(d)(e), 53(d)-(e), 55(d)-(e), 64-65). (*See also* Mot. at 6 ("At the very basis of Plaintiff's Complaint . . . Plaintiff has alleged and can demonstrate at trial that Defendants breached their contract . . . .").) Thus, given this allegation's flaws and its importance to the Andrews' complaint, the court cannot conclude that the Andrews have demonstrated serious questions or a likelihood of success on the merits of their breach of contract, slander of title, or FDCPA claims.[5]

Second, the Andrews also have not demonstrated serious questions or a likelihood of success on the merits of their declaratory claims. Most of those claims merely ask the court to make declarations out of the factual allegations underlying the Andrews' other causes of action. (*Compare* Compl. ¶¶ 71-85 *with id.* ¶¶ 41-70.) Such claims are redundant and cannot support an independent declaratory cause of action. *See Avirez, Ltd. v. Resolution Trust Corp.*, 876 F. Supp. 1135, 1143 (C.D. Cal. 1995). Instead, these claims must succeed or fail along with the causes of action to which they relate. *See id.*; *Ballard v. Chase Bank USA, NA*, No. 10CV790 L(POR), 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010).

---

[5] In any event, the FDCPA claim is irrelevant for purposes of this motion, as the FDCPA does not provide for injunctive relief. *See* 15 U.S.C. § 1692k; *Taylor v. Quall*, 471 F. Supp. 2d 1053, 1059 (C.D. Cal. 2007) (citing *Weiss v. Regal Collections*, 385 F.3d 337, 341 (3d Cir. 2004)).

To the extent that the complaint makes independent declaratory claims challenging assignments of the promissory note and deed of trust, those claims also do not merit a temporary restraining order.  As an initial matter, a borrower generally lacks standing to challenge the assignment of its loan documents unless the borrower shows that it is at a genuine risk of paying the same debt twice.  *See, e.g.*, *Borokowski v. BNC Mortgage, Inc.*, No. C12-5867 RJB, 2013 WL 4522253, at *5 (W.D. Wash. Aug. 27, 2013); *Brodie v. Nw. Trustee Servs., Inc.*, No. 12-CV-0469-TOR, 2012 WL 6192723, at *2-3 (E.D. Wash. Dec. 12, 2012).  The Andrews have not alleged that they are subject to such a risk.

In addition, the Andrews have not demonstrated any basis for their challenge to MERS's eligibility to assign the deed of trust.  (*See* Compl. ¶¶ 26-28, 48-50.)  Although MERS is not an eligible beneficiary under the DTA, MERS may act as an agent of the note-holder.  *See Bain v. Metropolitan Mortg. Grp., Inc.*, 285 P.3d 34, 47 (Wash. 2012).  Here, the deed of trust designates MERS as a beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns."  (Deed of Trust at 2.)  The Andrews cite no authority for their contention that MERS is incapable of transferring its interest in a deed of trust.  Moreover, this court has twice rejected conclusory allegations that MERS lacks the authority to transfer a deed of trust in cases similar to this one.  *See Zhong v. Quality Loan Serv. Corp. of Wash.*, No. C13-0814JLR, 2013 WL 5530583, at *3 (W.D. Wash. Oct. 7, 2013); *Wilson v. Bank of Am., N.A.*, No. C12-1532JLR, 2013 WL 275018, at *8 (W.D. Wash. Jan. 24, 2013).

The Andrews likewise fail to justify a temporary restraining order with their allegations challenging the transfers and securitization of their promissory note.  (*See*

ORDER- 7

Compl. ¶¶ 17-25; *see also id.* ¶¶ 72-77.)  These allegations are difficult to comprehend,[6] and the Andrews have not explained them in their motion or provided any supporting case authority.  Even construing these allegations liberally,[7] the court cannot find in them a valid legal claim, let alone a claim that presents serious questions or is likely to succeed on the merits.  *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1134-35.

Finally, even if the court could find serious questions or a likelihood of success on the merits, the DTA would prevent the court from issuing a temporary restraining order.  The Andrews do not allege that they have deposited or are capable of depositing with the clerk of the court the sums required under RCW 61.24.130(1).  (*See generally* Compl.; Mot.)  Moreover, the Andrews' application to proceed in forma pauperis indicates that the Andrews are unable to deposit those sums.  (*See* Mot. Ex. 1 at 1-2.)  The inability to comply with RCW 61.24.130(1) is fatal to the Andrews' motion because, as the Washington Supreme Court has made clear, the DTA provides the only means by which one can seek to enjoin a trustee's sale.  *Cox*, 693 P.2d at 686.[8]

---

[6] For example, the Andrews claim that "Defendant [DBSP] by bifurcating the payment stream intangible obligation as a(transferable record) [sic] pursuant to RCW 62A.8-102 negotiating – selling (conveying) outside of negotiation – selling (conveying) the Andrews Note to Defendant [DAAS], Defendant [DBSP] became the account debtor for the payment stream (transferable record) intangible obligation sold to the Defendant [DAAS]."  (Compl. ¶ 72.)

[7] *See Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions[.]").

[8] According to Defendants, the Andrews have discharged their personal liability in bankruptcy.  (*See* Resp. at 4 n.1.)  That discharge does not affect the court's ruling, however, because discharge in bankruptcy generally "extinguishes only one mode of enforcing a claim—

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES the Andrews' motion for a temporary restraining order (Dkt. # 13).

Dated this 1st day of April, 2015.

JAMES L. ROBART
United States District Judge

---

namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Rhodes v. HSBC Bank USA N.A.*, No. C11-5303RJB, 2011 WL 3159100, at *4 (W.D. Wash. July 26, 2011) (emphasis in original) (quoting *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992)) (internal quotation marks omitted). Discharge in bankruptcy also does not alter the deposit requirement of RCW 61.24.130(1). *See id.* at *5.